IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 05-CR-443 |
| v. : | |
| : | (Chief Judge Kane) |
| TERRANCE WILLIAMS and : | |
| ERIC HAYES, : | |
| : | |
| Defendants : | |

## MEMORANDUM

Before the Court is a motion to exclude the expert testimony of Dr. Sharon W. Cooper, a witness offered by the Government. The motion has been briefed, and is ripe for disposition. Because of the limited availability of the Government's proffered expert, the Court heard testimony and argument and ruled on the motions during a recess of the trial. This order memorializes the Court's ruling in trial and sets forth the background and basis for the ruling. For the following reasons, the motion will be granted in part and denied in part.

**I.   INTRODUCTION**

On December 8, 2005, Defendants Terrance Williams and Eric Hayes and fourteen other individuals were named in a thirty-two count indictment alleging a multi-year, nationwide conspiracy to engage in the interstate sex trafficking of women, including juveniles. The indictment also separately charged Defendants with other related crimes.[1] As part of its case-in-

---

[1] Defendants Williams and Hayes are each charged with one count of conspiracy and one count of interstate travel in aid of racketeering, in violation of 18 U.S.C. § 371 and § 1952(a)(3), respectively. In addition, Defendant Williams is charged with one count of sex trafficking of children or by force, fraud, or coercion, in violation of 18 U.S.C. § 1591, and one count of transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2523(a). Defendant Hayes is separately charged with one count of coercion and enticement of an individual, in violation of 18 U.S.C. § 2422(a), and in a consolidated count, with the travel of transporting an individual in interstate commerce with intent that the individual engage in prostitution, in violation of 18 U.S.C. § 2421.

chief, the Government proposes to call Dr. Sharon W. Cooper as an expert witness to offer opinion testimony in three general areas: (1) the societal and criminal justice implications of prostitution and the sexual exploitation of women; (2) the medical and mental-health aspects of prostitution, including general testimony on victim risk and vulnerability factors and on common methods of grooming and deterrents to escape; (3) and the medical and mental-health impact that life as a prostitute had on certain women involved in this case.  (Doc. No. 983; see also Doc. Nos. 949, 949-3.)

Defendant Hayes filed a motion in limine to exclude Dr. Cooper's expert testimony (Doc. No. 983), and Defendant Williams moved to join the motion on October 19, 2007, during the course of trial.  Defendants contend that Dr. Cooper's testimony should be excluded because her expert opinion violates Rules 403 and 702 of the Federal Rules of Evidence, as it is irrelevant, unduly prejudicial, and not of assistance to the trier of fact.  Furthermore, Defendants seek exclusion on the grounds that the Government's notice of intent to call an expert violated paragraphs 4(B) and 7 of the Court's scheduling order (Doc. No. 135), as well as Federal Rule of Criminal Procedure 16(a)(1)(G) and (c).

## II.     DISCUSSION

### A.     Testimony about the societal and criminal justice implications of prostitution

As an initial matter, the Court finds that the first category of evidence that the Government intends to offer through Dr. Cooper – that is, evidence about the societal and criminal justice implications of prostitution – is inadmissible as a matter of law.

Dr. Cooper's proffered testimony includes, among other things, a discussion of the costs of commercial sexual exploitation to society.  For example, the Government offers Dr. Cooper to

speak of the "social and criminal justice impact of prostitution," and as examples of this impact, she lists individuals with "multiple arrests, homelessness, [the] transient lifestyle associated with trafficking, poverty, [the] lack of education and a sense of hopelessness for independence without support of an offender." (Doc. No. 949-3.) In her report to the Government, Dr. Cooper also mentions the societal concern that women who are trafficked frequently generally receive inadequate health care, (Doc. No. 1028, at 3) (discussing the lack of access to breast cancer screening, cervical cancer screening, and colon cancer screening), and as a consequence are at higher risk for certain medical conditions. (Id.; see also Doc. No. 949-3, at 1-2.) By way of further example of this type of broad testimony, during the *Daubert* hearing conducted by the Court and discussed in greater detail below, Dr. Cooper also addressed concerns regarding the vast number of children believed to be prostituted in the United States and the "pimps and hos" culture that has contributed to the normalization of this type of sexual exploitation.

      The Court finds that testimony of this type is not relevant under Rule 401 of the Federal Rules of Evidence, which defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Discussion of the societal and criminal justice implications of prostitution is not probative of whether Defendants Williams and Hayes engaged in a criminal conspiracy to traffic women or committed the other sex trafficking offenses with which they are charged. While such testimony is well suited for congressional hearings on appropriate penalties, it would not aid a juror in assessing whether a crime was committed. Moreover, even if testimony of this type were relevant to the case now before the Court, the danger of unfair prejudice would far outweigh its probative value. Fed. R.

Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). Accordingly, the Government may not, through Dr. Cooper or otherwise, introduce testimony on the far-reaching social and criminal justice implications that commercial sexual exploitation has on our society.

> **B.** **Dr. Cooper's expert testimony about the medical and mental-health aspects of prostitution, both generally and specifically with respect to women involved in this case**

The Government also proposes to have Dr. Cooper offer expert opinion testimony in two other areas, stated in general terms as follows: (1) the medical and mental-health aspects of commercial sexual exploitation of women and juveniles, including general testimony about victim risk and vulnerability factors and about the effects of common methods of grooming and deterrents to escape; and (2) the specific risk factors, medical conditions, and mental-health issues, if any, that are present in the women allegedly exploited as part of the interstate conspiracy charged in the superseding indictment.

Testimony by experts is addressed in Rule 702 of the Federal Rules of Evidence, which provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  The Supreme Court has explained that Rule 702 imposes a "special obligation" upon on district court judges to act as "gatekeepers" to ensure that expert testimony meets the Rule 702 requirements of qualification, reliability, and fit.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993); Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (explaining the "trilogy of restrictions on expert testimony" embodied in Rule 702).  In performing this gatekeeping function, a court must analyze each of the three restrictions on expert testimony, that is, the Court must consider the proposed expert's qualifications, the reliability of her methods, and whether her testimony "fits" the case at hand.  Schneider, 320 F.3d at 404.

When assessing the requirement of qualification, a court must evaluate whether a purported expert has specialized knowledge in a given field.  The bar for establishing that a witness has the requisite specialization is not set especially high, as "a broad range of knowledge, skills, and training qualify an expert."  In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994).  In this case, in addition to considering the *curriculum vitae* provided by the Government as part of its notice to call an expert, the Court held a *Daubert* hearing to explore, among other topics, Dr. Cooper's qualifications to testify as an expert about the commercial sexual exploitation of adult and juvenile females.

Dr. Cooper is a board-certified pediatrician who has practiced medicine for more than two decades, first in the military and then as a civilian.  Currently, Dr. Cooper has her own practice as a developmental and forensic pediatrician and is a faculty member of the University of North Carolina at Chapel Hill School of Medicine and of the University of Health Sciences in Bethesda, Maryland.  During the course of her career, Dr. Cooper has treated numerous

individuals who have been sexually abused, and she has directly evaluated and treated approximately twenty to twenty-five victims of commercial sexual exploitation, the majority of whom were her patients in the past four years.  Dr. Cooper is familiar with the relevant literature in the field of commercial sexual exploitation; she lectures nationwide and internationally on the topic; and she has recently coauthored two textbooks with several chapters devoted to the prostitution of children, youths, and adults.  Based upon the Court's review of Dr. Cooper's educational background, professional experience, and academic credentials, the Court finds that Dr. Cooper possesses the specialized knowledge to qualify her as an expert on the commercial sexual exploitation of adults and juveniles, as well as the medical and mental-health aspects of prostitution.

  Having found that Dr. Cooper is qualified to testify as an expert on the commercial sexual exploitation of women, the Court's inquiry turns to the second and third restrictions on expert testimony – reliability and fit.  Reliability, the second requirement, calls for the Court to determine whether an expert witness's testimony is based upon a reliable methodology, rather than subjective belief or unsupported speculation.  See Kumho Tire, 526 U.S. at 150-52 (explaining that the gatekeeping requirement exists "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."); see also Paoli, 35 F.3d at 742 ("[T]he expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." (quoting Daubert, 509 U.S. at 590)).  While flexible, the inquiry at this step should take into account all relevant factors, as well as certain

factors identified by the Supreme Court.[2]  <u>Paoli</u>, 35 F.3d at 742 & n.8 (discussing the factors considered in certain Supreme Court decisions).  The third requirement – fit – requires that "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." <u>Schneider</u>, 320 F.3d at 404; <u>see also</u> <u>United States v. Ford</u>, 481 F.3d 215, 218 (3d Cir. 2007) (explaining that the fit or relevance inquiry "should be evaluated under the standard expressed in Rule 401 of the Federal Rules of Evidence").

          *1.*      *General testimony about the medical and mental-health aspects of prostitution*

Although many of the factors typically used to guide the reliability determination are not applicable to the general testimony proffered by Dr. Cooper,[3] the Court nevertheless finds that Dr. Cooper's proffered testimony meets the *Daubert* requirement of reliability.  After an examination of Dr. Cooper during the *Daubert* hearing, it is plainly evident that Dr. Cooper is familiar with the body of literature addressing prostitution.  Also, as a published expert in the area of commercial exploitation of youth and related issues, Dr. Cooper's opinions and the

---

   [2]  Specifically, a court should consider the following eight factors, as well as any other relevant factors:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

<u>Paoli</u>, 35 F.3d at 742 n.8.

   [3]  <u>See</u> footnote 2 <u>supra</u>.

methods by which she reached these conclusions have been subjected to peer review and are, in fact, generally accepted in the field. Defendant Hayes suggested during the *Daubert* hearing that Dr. Cooper's methodology is inherently unreliable because there are no readily apparent competing theories about the medical and mental-health aspects of prostitution. This argument fails, however, because general acceptance does not equate to unreliability.

Having found that Dr. Cooper is qualified as an expert and that her methodology is reliable, the Court turns to "fit" – whether this evidence will assist the trier of fact. The Government seeks to have Dr. Cooper provide background information on the sex trafficking of juveniles and young adults, the dynamics of the typical pimp-prostitute relationship, and the efficacy of the methods of grooming and the deterrents to escape on the prostitutes. The Government also seeks to have Dr. Cooper testify about the medical and mental-health aspects of prostitution, such as the recognized syndromes related to the victimization of young women in prostitution situations (for example, commercial sexual exploitation of children and youth syndrome, or "CSECY").

Defendants contend that the Government's only purpose for offering this type of testimony is to improperly bolster its witnesses' testimony, that the jury is capable of making credibility determinations on its own, and therefore that this testimony will not assist the trier of fact. (See Doc. Nos. 984 & 1046.) The Government counters that Dr. Cooper's testimony is both helpful to the jury and relevant, as it "speaks directly to the coercive element of the Defendant's offense [because t]he Defendants used both physically and mentally abusive tactics to maintain control over their victims." (Doc. No. 1039, at 6.)

After consideration of the arguments raised by the parties and the proffer by Dr. Cooper

during the *Daubert* hearing, the Court finds that Dr. Cooper's testimony meets the "fit" requirement, as it is both relevant and will assist the trier of fact. The Court agrees with the Government that the background information Dr. Cooper could provide would assist the jury to understand the dynamics of exploitation, to explain why the women did not leave their pimps, and to generally demystify the relationship between pimp and prostitute. See United States v. Taylor, 239 F.3d 994, 998 (9th Cir. 2001) (upholding the admission of expert testimony on the relationship between a pimp and his prostitute because "[b]y and large, the relationship between prostitutes and pimps is not the subject of common knowledge").

Specifically, the Court finds Dr. Cooper qualified to testify as an expert about the medical and mental-health aspects of commercial sexual exploitation and the recognized syndromes related to the victimization of young women in prostitution situations, such as post traumatic stress disorder ("PTSD"), CSECY, and other similar disorders. Additionally, Dr. Cooper's opinion testimony may address factors related to vulnerability and enticement of women and juveniles, and may include a discussion of the effects that commonly used grooming and deterrent practices have on prostitutes. The Court believes that this general information will provide a framework within which the jury can consider the testimony presented to it and enable the jury to more meaningfully evaluate whether the element of coercion has been established by the Government beyond a reasonable doubt.[4]

---

[4] See Taylor, 239 F.3d at 998 ("By and large, the relationship between prostitutes and pimps is not the subject of common knowledge. A trier of fact who is in the dark about that relationship may be unprepared to assess the veracity of an alleged pimp, prostitute, or other witness testifying about prostitution.") (internal citations omitted); United States v. Sutherland, 191 F. App'x 737, 741 (10th Cir. 2006) (finding no abuse of discretion where "Sgt. Schmidt's [expert] testimony about prostitution rings and the relationships between prostitutes and their pimps, from recruitment on, was available for the jury to assess the context and significance of

Insofar as Defendants object to the aforementioned testimony on the basis of Rule 403, the Court overrules that objection. The narrow category of information addressed above is relevant and helpful to the jury; with a limiting instruction and proper jury instructions, Defendants would not be unduly prejudiced by the introduction of this background, foundational testimony.

### 2. *Specific victim witness testimony*

The Court finds that Dr. Cooper's proffered testimony about the medical and mental-health effects *specific* to the women involved in the alleged prostitution conspiracy fails to meet the *Daubert* standards. The Court is unconvinced that Dr. Cooper's methodology is reliable, in that she diagnosed the various women with physical and mental-health ailments based upon telephone conversations lasting approximately one hour.[5] While it is true that "telemedicine" is becoming a more common practice, Dr. Cooper herself acknowledged that it is "out of the ordinary" to use telephone interviews for evaluating patients in the absence of any established patient/doctor relationship. Additionally, the Court is concerned that Dr. Cooper made no

---

the events that occurred, viz., in assessing many of the facts that could bear on guilt or innocence."); see also United States v. Anderson, 851 F.2d 384, 392-93 (D.C. Cir. 1988) (expert testimony on the *modus operandi* of pimps and on the nature of the relationship between pimps and prostitutes was relevant, though the appellate court voiced concerns about the possibility of undue prejudice); cf. United States v. Hitt, 473 F.3d 146, 158 (5th Cir. 2006) (holding that the admission of expert testimony regarding the typical behavior of child molesters was not an abuse of discretion); United States v. Hayward, 359 F.3d 631, 636 (3d Cir. 2004) (holding that it was not error for the court to allow expert testimony on "the patterns exhibited by many acquaintance child molesters, including selection of victims from dysfunctional homes, formulation of a customized seduction process, lowering the victim's inhibitions about sex, isolating the victim, and soliciting the victim's cooperation in the victimization process").

[5] By way of example, during the course of one of these one-hour phone conversations, Dr. Cooper diagnosed one woman with seven types of physical injuries and eight different mental-health conditions. (See Doc. No. 1028, at 5.)

apparent effort to locate any medical records these individuals may have had from prior treating physicians. Accordingly, the Court finds that the Government has failed to meet its burden to show reliability.

Moreover, with respect to "fit," the final requirement, the Court doubts whether the medical and mental-health effects on the individual women are relevant to the charges being brought against Defendants Williams and Hayes, particularly in light of Dr. Cooper's testimony that she "did not discuss with [the women] the degrees, what happened to them and their victimization, all the nuts and bolts of that. I specifically talked about, tell me how your health is now, what kind of medical problems are you already having . . . ."[6] In essence, Dr. Cooper examined these women with an eye toward treatment of their current health ills, not necessarily to perform a psychological evaluation of their willingness to become and/or remain prostitutes or their desire to leave prostitution. Even if this information were relevant under Rule 401 of the Federal Rules of Evidence, the Court would find that, under these circumstances, the probative value of the evidence is outweighed by the likelihood of undue prejudice.

### C. Adequacy of the Government's notice of intent to call an expert

In addition to their substantive arguments, Defendants argue that Dr. Cooper's testimony should be excluded because of the Government's failure to fulfill certain disclosure requirements imposed by the Court's scheduling order and Rule 16 of the Federal Rules of Criminal Procedure.

---

[6] Dr. Cooper's report and correspondence makes clear that the purpose of her medical interviews of these individuals was to "facilitate treatment options" and to inform the women of the likely relationship between their current medical problems and their "having been trafficking victims." (See Doc. No. 1028, at 3.)

The Court became aware of the Government's intent to call Dr. Cooper as an expert witness on September 6, 2007.  (Doc. No. 949.)  Attached to the Government's notice of intent to call an expert, the Government provided a copy of Dr. Cooper's *curriculum vitae* and a letter from Dr. Cooper to the Government in which she summarized her prospective testimony.  (Doc. Nos. 949-2 & 949-3.)  The letter from Dr. Cooper, dated May 12, 2007, provides a broad profile of the type of woman that is more likely to become involved in prostitution and discusses the psychological and medical impact of prostitution on prostitutes, as well as the societal costs of the commercial sexual exploitation of women (Doc. No. 949-3).  On September 18, 2007, following Defendant Hayes's motion, the Government filed a supplement to its September 6th notice.  (Doc. No. 1020.)  The supplement includes a copy of a September 17, 2007, letter from Dr. Cooper to the Government and an addendum report that she provided to the Government with her letter.  (Id.)

The Court will address Defendants' contentions related to the scheduling order and Rule 16 in turn.

### 1.     *The Court's scheduling order*

Paragraph 4(B) of the Court's scheduling order directs the Government to make available to a defendant within ten (10) days of receipt "any relevant results or reports of physical or mental examinations, and or scientific tests or experiments made in connection with the case," while paragraph 7 of the Court's order clarifies that the Government's duty of disclosure is a continuing one.[7]  (Doc. No. 135, at 2-3.)  A review of the May 12, 2007, letter demonstrates that

---

[7] The Court's scheduling order, paragraph 4(B) provides, in relevant part as follows:

Within ten (10) days after the date of this order, the United States

does not detail the "results or reports of physical or mental examinations . . . or scientific tests or experiments made in connection with the case." (See Doc. No. 135, at 2; Doc. No. 949-3, at 1-2.) Defendants argue that Dr. Cooper's mention of "[making] efforts to determine if the victims in this case have [suffered from certain medical or mental-health problems]" brings it within the ambit – or at least the spirit – of the Court's standing order (Doc. No. 984, at 3); however, the Court disagrees that the May 12, 2007, letter is a disclosure of the type required by the plain language of the Court's standing order. Accordingly, the Court finds that the Government has not violated the Court's standing order by failing to disclose the May 12, 2007, letter within ten days of its receipt. In this respect, Defendants' motion will be denied.

### 2. *Rule 16(a)(1)(G) and (c) of the Federal Rules of Criminal Procedure*

Defendants raise a second procedural argument in support of excluding Dr. Cooper's testimony: Federal Rule of Criminal Procedure 16, specifically paragraphs (a)(1)(G) and (c). Rule 16(a)(1)(G) provides that, in certain circumstances, the Government must "give to the defendant a written summary of any testimony that the government intends to use under Rules

---

> Attorney, or one of his assistants, and the attorney for the defendant shall meet in the United States Attorney's Office . . .  At that conference, the government shall: . . .
>
> (B) Permit the attorney for the defendant to inspect and copy or photocopy any relevant results or reports of physical or mental examinations, and or scientific tests or experiments made in connection with the case, or copies thereof, within the possession, custody or control of the government . . .

(Doc. No. 135, at 2.) Paragraph 7 of the standing order states that "[a]ny duty of disclosure set forth [in this standing order] is a continuing one and the United States Attorney shall produce any additional information gained by the government within ten (10) days after the receipt thereof . . . ." (Id. at 3.)

702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief," and Rule 16(c) directs that this duty to disclose is a continuing one. Fed. R. Crim. P. 16(a)(1)(G), (c). The summary to be disclosed by the Government must set forth "the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(a)(1)(G). Defendants assert that the September 6, 2007, notice of Dr. Cooper and her testimony violated Rule 16(a)(1)(G) and (c) because the Government had been aware of Dr. Cooper's opinions as early as May 12, 2007, the date of Dr. Cooper's letter. They also challenge the sufficiency of the information detailed in the May 12, 2007, letter.

As noted above, the Court found certain portions of Dr. Cooper's testimony to be admissible under the Federal Rules of Evidence. Specifically, the Court qualified Dr. Cooper to speak as an expert about the medical and mental-health aspects of commercial sexual exploitation, such as the syndromes related to the victimization of young women in prostitution situations, factors related to vulnerability and enticement of women and juveniles, and the effects that commonly used grooming and deterrent practices have on prostitutes. With respect to this testimony, the Court finds the Government's notice to be sufficient. In their September 6, 2007, filing, the Government included a *curriculum vitae* detailing Dr. Cooper's education and experience and listing, among other things, two books she recently coauthored in the field of child sexual exploitation, <u>Quick Reference to Child Sexual Exploitation for Healthcare, Social Services, and Law Enforcement</u> and <u>Medical, Legal & Social Science Aspects of Child Sexual Exploitation: A Comprehensive Review of Pornography, Prostitution, and Internet Crimes</u>. (Doc. No. 949-2.) This information, coupled with the May 12, 2007, letter outlining Dr. Cooper's intent to testify, among other topics, to the "common methods of grooming, deterrents

to escape, and the victim impact of sexual exploitation" in order to "educate the court regarding the myths and realities associated with prostitution" (Doc. No. 949-3) is sufficient to place Defendants on notice of "the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications" to testify generally on these topics related to prostitution.[8]

---

[8] Although ruled inadmissible on other grounds, the Court notes that the Government did not provide adequate notice to the Defendants with respect to Dr. Cooper's evaluations of the alleged victims involved in this case.

On September 17, 2007, after the filing of this motion in limine, the Government received and then promptly disclosed an incomplete report by Dr. Cooper summarizing certain conclusions she reached after speaking with some of the women prostituted in this case and providing her diagnoses of five of the ten women that she had contacted. (Doc. No. 1028, 3-4.) Although the Government acknowledged the late date of the supplemental disclosure, the Government indicated that it intended to offer Dr. Cooper to testify about the medical and mental-health conditions being suffered by these five young women and to offer evidence regarding one witness that Dr. Cooper interviewed during the trial on the morning of Dr. Cooper's testimony. The Government sought to excuse the delayed and incomplete report explaining that, under the circumstances, it had made every effort to keep Defendants apprised of Dr. Cooper's intended testimony. (See Doc. No. 1039, at 2, 6) (noting that the Government had provided Defendants with the information in its possession, such as by providing the Defendants copies of all correspondence it had with Dr. Cooper and, on two occasions, "forwarded written communications to Defendants which briefly summarized Dr. Cooper's intended proffer"); (see also id. at 7) (stating: "Dr. Cooper is the leading expert in her field. Consequently, her expertise is constantly in demand. Her obligations to other matters prevented her from providing the Government with a detailed summary immediately.")

The Court is unpersuaded by the Government's contentions that it satisfied its disclosure obligations to Defendants with respect to Dr. Cooper's evaluation of the individuals that she interviewed. The report was incomplete and provided to Defendants with less than two weeks to trial – not to mention the Government's desire to introduce testimony about one woman interviewed, unbeknownst to Defendants, *the morning of* Dr. Cooper's testimony. The Court is persuaded by Defendants' contention that this late disclosure would prevent defense counsel from "investigating Dr. Cooper's opinion or the reasoning and information utilized in reaching [said opinion]" or from "obtain[ing] an independent opinion regarding the analysis Dr. Cooper utilized or the accuracy of her opinion." (Doc. No. 984, at 4); compare with United States v. Davis, 397 F.3d 173, 178 (3d Cir. 2005) (acknowledging that Rule 16 was violated but determining that a new trial is not warranted because Defendants suffered no prejudice as a result of the inadequate disclosure). Accordingly, Dr. Cooper's testimony with respect to the individuals interviewed is inadmissable not only under the Federal Rules of Evidence, as discussed above, but also under the Federal Rules of Criminal Procedure.

Accordingly, the Court finds Dr. Cooper's general testimony on the abovementioned topics to be procedurally admissible under Federal Rule of Criminal Procedure 16.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No.  05-CR-443 |
| v. : | |
| : | (Chief Judge Kane) |
| TERRENCE WILLIAMS and : | |
| ERIC HAYES, : | |
| : | |
| Defendants : | |

## ORDER

**AND NOW**, on this 19th day of October, 2007, upon reviewing the arguments of the parties and applicable law, and after conducting a hearing on the qualifications of and proposed testimony by Dr. Sharon W. Cooper, a witness proffered by the Government as an expert in the above-captioned case, **IT IS HEREBY ORDERED THAT** Defendants' motion to exclude Dr. Cooper's testimony is **GRANTED** in part and **DENIED** in part as follows.

1. The Court finds that Dr. Cooper is qualified by skill, training, and expertise to testify as to the medical and mental-health aspects of commercial sexual exploitation.

2. Defendants' motion is denied insofar as Dr. Cooper shall be permitted to testify *generally* about commercial sexual exploitation and the syndromes suffered by prostitutes that are related to their exploitation.  Her opinion testimony may address factors related to vulnerability and enticement of women and juveniles, and may include a discussion of the effects that commonly used grooming and deterrent practices have on prostitutes.  The Court finds that such testimony comports with the requirements of Federal Rule of Evidence 702.  Such testimony is relevant, and will assist the trier of fact to understand the evidence presented and to evaluate whether coercion was present in the case.

3. Defendants' motion is granted insofar as Dr. Cooper shall not be permitted to testify to the broad social and criminal justice implications of commercial sexual exploitation.  The Court finds this evidence to be irrelevant under Federal Rule of Evidence 401, and assuming the testimony is relevant, the Court finds it to be unduly prejudicial under Federal Rule of Evidence 403.

4. Defendants' motion is granted in so far Dr. Cooper will not be permitted to testify

about the individuals she interviewed in connection with this case or about any medical diagnoses of such individuals.  The Court is not satisfied that the opinion offered meets the Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), standards of reliability and fit.  Moreover, the Court finds such testimony to be inadmissible on the basis of undue prejudice under Federal Rule of Evidence 403 and on the basis of its late disclosure under Federal Rule of Criminal Procedure 16(a)(1)(G).


    S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania