## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERRANCE WILLIAMS,** | : | |
| **Petitioner** | : | **No. 1:05-cr-00443-3** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent** | : | |

## MEMORANDUM

Presently before the Court is an amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, filed by Petitioner Terrance Williams on September 22, 2014. (Doc. No. 2218.)  For the reasons provided herein, the Court will deny Petitioner's Section 2255 motion.

### I.    BACKGROUND

On October 12, 2007,  Petitioner Terrance Williams was convicted by a jury on the following counts: (1) conspiracy to:  (a) transport women for prostitution purposes (18 U.S.C. § 2421),  (b) coerce and entice (18 U.S.C. § 2422),  and (c) engage in interstate travel in aid of racketeering (18 U.S.C. § 1952), in violation of 18 U.S.C. § 371 (Count 1);  (2) interstate travel in aid of racketeering in violation of 18 U.S.C. § 1952 (Count 2);  (3) sex trafficking of children in violation of 18 U.S.C. § 1591 (Count 8);  and (4) transportation of minors for prostitution in violation of 18 U.S.C. § 2423(a) (Count 10).  (Doc. No. 1131.)  On December 8, 2008, Petitioner was sentenced by this Court to a 540-month term of imprisonment, a fine of $2000, special assessments totaling $400, and a lifetime term of supervised release.  (Doc. No. 1681.)  The aggregate sentence of imprisonment consisted of a term of 60 months for Count One, 60 months for Count 2, 540 months for Count Eight, and 360 months for Count Ten, to be served concurrently.  (Id.)

Through his trial counsel Timothy J. O'Connell, Petitioner timely appealed his conviction and sentence to the United States Court of Appeals for the Third Circuit.  (Doc. No. 1713.)  On May 23, 2011, the Third Circuit issued a certified judgment affirming Petitioner's conviction on all counts, but remanded his case for resentencing on Count Eight of the indictment and vacated his sentence on Counts Two and Ten of the indictment.  (Doc. No. 1986.)  Shortly thereafter, the Third Circuit recalled its certified judgment as premature due to its discovery that Petitioner had timely requested a rehearing of his appeal on June 15, 2011.  (Doc. No. 1996.)  On November 27, 2012, the Third Circuit reissued its earlier certified judgment affirming Petitioner's conviction on all counts, vacating his sentence on Counts Two and Ten of the indictment, and remanding his case for resentencing on Count Eight of the indictment.[1]  (Doc. No. 2055.)

Adhering to the Third Circuit's mandate, the Court resentenced Petitioner on April 12, 2013, to a concurrent sentence of 480 months' imprisonment on Counts One and Eight.  (Doc. No. 2116.)  Petitioner did not appeal his resentence.  Rather, on March 27, 2014, he filed a motion to vacate pursuant to 28 U.S.C. § 2255.  (Doc. No. 2144.)  Upon receipt of Petitioner's Section 2255 motion, the Court issued Petitioner a notice of election form that Petitioner completed and submitted on September 19, 2014.  (Doc. No. 2166.)  Together with his completed notice of election form, Petitioner filed a motion to amend his Section 2255 motion and attached a proposed amended Section 2255 petition.  (Doc. No. 2167.)  On September 22, 2014, the Court withdrew the March 27, 2014 Section 2255 motion at the request of the Petitioner and granted his motion to amend, refiling the proposed amended Section 2255 petition as a separate docket entry.  (Doc. Nos. 2169, 2218.)

---

[1]On November 19, 2012, Petitioner filed a Section 2255 motion to vacate, correct, or set aside his sentence imposed on December 8, 2008.  (Doc. No. 2052.)  On January 29, 2013, this Court denied the petition without prejudice in light of the Third Circuit's subsequent reissuance of its certified judgment.  (Doc. No. 2080.)

The Government filed its brief in opposition to Petitioner's Section 2255 motion on October 14, 2014.[2]  (Doc. No. 2178.)  On November 20, 2014, Petitioner filed a reply brief. (Doc. No. 2181.)  On March 6, 2015, Petitioner supplemented his reply by filing a "Motion for Judicial Notice of Adjudicative Facts."  (Doc. No. 2196.)  On June 30, 2016, Petitioner filed a motion to expedite the disposition of his Section 2255 motion.  (Doc. No. 2214.)  Having been fully briefed, Petitioner's Section 2255 motion is ripe for disposition.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner may file a motion requesting that the sentencing court vacate, set aside, or correct his sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  However, Section 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing.  United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (citing United States v. Addonizio, 442 U.S. 178, 185 (1979)).  Rather, Section 2255 is implicated only when the alleged error raises "a fundamental defect which inherently results in a complete miscarriage of justice." Addonizio, 442 U.S. at 185.  Under the Antiterrorism and Effective Death Penalty Act, a petitioner has one year from the time his conviction becomes final to file a Section 2255 motion. 28 U.S.C. § 2244.

Further, Section 2255(b) advises that a prisoner may be entitled to a hearing on his motion.  The decision to hold a hearing is wholly within the discretion of the district court.

---

[2] Along with its brief in opposition, the Government submitted a CD containing an extensive number of supporting exhibits that this Court has frequently cited to throughout this Memorandum.

<u>Gov't of Virgin Islands v. Forte</u>, 865 F.2d 59, 62 (3d Cir. 1989).  When the record affirmatively indicates that a petitioner's claim for relief is without merit, the claim may be decided on the record without a hearing.  See <u>Gov't of Virgin Islands v. Nicholas</u>, 759 F.2d 1073, 1075 (3d Cir. 1985).  If the record conclusively negates the factual predicates asserted in support of a Section 2255 motion, or, if the movant would not be entitled to relief as a matter of law even if the factual predicates as alleged in the motion are true, the trial court may elect not to conduct an evidentiary hearing.  <u>Nicholas</u>, 759 F.2d at 1075.

### III.    DISCUSSION

Petitioner has presented the Court with a 52-page Section 2255 motion that advances twelve (12) grounds for relief.  (Doc. No. 2218.)  Several of these grounds for relief contain sub-issues that detail a litany of alleged errors at trial and during resentencing that Petitioner insists individually or collectively entitle him to reversal of his conviction.  In an effort to accord Petitioner a liberal construction of his Section 2255 motion and to facilitate the review of Petitioner's claims, the Court categorizes Petitioner's challenges into:  (1) claims of ineffective assistance of trial and appellate counsel, Timothy J. O'Connell;  (2) claims of ineffective assistance of counsel appointed to represent Petitioner at resentencing, Jeffrey Conrad;  and (3) a claim of actual innocence.  The Court addresses each of these grounds for relief herein, grouping specific alleged instances of misconduct within these broader categories where appropriate.

### A.    Ineffective Assistance of Counsel Standard

Principally, Petitioner argues that his Fifth and Sixth Amendment rights to effective assistance of counsel were violated by his court-appointed defense attorney at trial, Timothy J.

O'Connell ("Attorney O'Connell"), and his court-appointed counsel at resentencing, Jeffrey Conrad ("Attorney Conrad").[3]

A Section 2255 challenge to a conviction or sentence based upon a claim of ineffective assistance of counsel is evaluated under the two-pronged test articulated by the Supreme Court of the United States in the seminal case of  Strickland v. Washington, 466 U.S. 668 (1984).  George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001);  see also Massaro v. United States, 538 U.S. 500, 504 (2003) ("[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.").  Under the two-prong  Strickland test, a petitioner challenging his conviction on a theory that he was deprived of his right to effective assistance of counsel bears the burden of demonstrating both (1) deficient performance by counsel and (2) prejudice resulting from that deficient performance.  466 U.S. at 687.

Under the first Strickland prong, counsel's performance is measured against an objective standard of reasonableness, defined by prevailing professional norms.  Id. at 687.  Counsel's representation will be found deficient only upon a showing that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment."  Id. at 688. Judicial scrutiny of an attorney's performance under this prong is highly deferential.  Id. at 689. The court must embrace a strong presumption that counsel's performance falls within the wide

---

[3] Although Strickland v. Washington, 466 U.S. 668 (1984), was premised on the Sixth Amendment right to effective assistance of counsel at trial, it since has been extended to apply to Fifth Amendment ineffective assistance of direct appellate counsel claims.  United States v. Cross, 308 F.3d 308, 315 & nn.11-12 (3d Cir. 2002).  Furthermore, Strickland has been extended to noncapital sentencing proceedings.  See Glover v. United States, 531 U.S. 198, 202–04 (2001);  Lafler v. Cooper, 132 S. Ct. 1376, 1385-86 (2012) (reaffirming that Glover "establish[ed] that there exists a right to counsel during sentencing in . . . noncapital . . . cases").

range of reasonable professional assistance.  Id.  In evaluating whether the petitioner has

established deficient performance, the reviewing court must endeavor to "eliminate the distorting

effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

evaluate the conduct from counsel's perspective at the time."  Id.

Under the second Strickland prong, a petitioner "must demonstrate that he was prejudiced

by counsel's errors."  Id.  Specifically, the petitioner's burden is to show that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."  Id. at 694.  "Reasonable probability" is defined as "a probability

sufficient to undermine confidence in the outcome."  Id.

As both Strickland prongs must be satisfied to prevail on an ineffective-assistance-of-

counsel claim, a court's finding that a petitioner failed to make the requisite showing on one

prong negates the need for the court to consider the other prong.  Id. at 697 ("If it is easier to

dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we

expect will often be so, that course should be followed.").  Applying the two-prong Strickland

standard, the Court turns to Petitioner's particular claims.

### 1.      Ineffective-assistance-of-counsel claims involving Attorney O'Connell

### a.      Claims arising out of the April 29, 2005 Report

Petitioner's ineffective-assistance-of-counsel claims involving Attorney O'Connell are

largely tied to the introduction at trial of a report prepared on an FD-302 form dated April 29,

2005 ("the April 29, 2005 Report").  This report summarizes statements taken from the

prosecution's key witness, Jessica Klempner ("Klempner"), after her arrest in Harrisburg,

Pennsylvania, and includes references to an earlier report detailing another investigatory

interview with Klempner conducted on March 20, 2005 in Florida.  (Apr. 29, 2005 Report at 5.)

According to Petitioner, the April 29, 2005 Report falsely attributes to Klempner an admission to having worked as a prostitute in Toledo, Ohio at Petitioner's behest.  (Doc. No. 2218 at 15.)  The contested excerpt from the April 29, 2005 Report provides:

> (In a previous interview on 03/20/2005, KLEMPNER spoke with Special Agent Robert R. Cochran of the Federal Bureau of Investigation, Pensacola Resident Agency.  In this interview she advised that PRINCE got mad at her because she did not make enough money and passed her off to another pimp named "TERRY", who drove from Toledo, Ohio to Pennsylvania to get her.  **"TERRY" worked KLEMPNER as a prostitute in Toledo, Ohio**, and then sent her to work at an escort service in Orlando.)
>
> KLEMPNER admitted that "TERRY" and TERRANCE WILLIAMS were the same person but still asserts that WILLIAMS is not a pimp and that he takes care of her mom and herself.

(Apr. 29, 2005 Report at 5) (emphasis added).  In support of his position that the April 29, 2005 Report is tantamount to false evidence, Petitioner references the March 22, 2005 FD-302 Report ("the March 22, 2005 Report"), which provides a synopsis of an interview conducted of Klempner on March 20, 2005.  (Mar. 22, 2005 Report at 1.)  That report reads, in relevant part:

> When KLEMPNER did not make enough money, PRINCE got mad and passed her off to TERRY LNU, who drove from Toledo, Ohio to Pennsylvania to get her.  **TERRY worked KLEMPNER in Toledo** and then sent her to work at an escort service in Orlando.

(Id.) (emphasis added).  Petitioner argues that the discrepancy in the March 22, 2005 Report—bearing no mention of Klempner's previous work as a "prostitute" in Toledo—and the April 29, 2005 Report—containing explicit notations to Klempner's prostitution activities in Toledo—is evidence that the April 29, 2005 Report contains a material misrepresentation that was nevertheless knowingly used by the prosecution to obtain a tainted conviction.  (Doc. No. 2218 at 16.)

The allegations pertaining to April 29, 2005 Report that form the basis of Petitioner's ineffective assistance-of-counsel claims can be subdivided into two broad categories;  namely,

(1) those allegations relating to the prosecutor's use of the April 29, 2005 Report during grand jury proceedings and at trial, and (2) those allegations of specific errors by Attorney O'Connell in his use of the April 29, 2005 Report at trial.  With respect to the first category, Petitioner argues that Attorney O'Connell was ineffective in failing to investigate, object to, or otherwise challenge instances of prosecutorial misconduct that occurred when the prosecutor knowingly presented the fabricated statement in the April 29, 2005 Report to the grand jury, incorporated that false statement into the indictment, and mischaracterized the nature and origin of that report at trial.  (Doc. No. 2218 at 14-34.)  With respect to the second category, Petitioner argues that Attorney O'Connell rendered ineffective assistance by moving for the admission of the April 29, 2005 report into evidence and describing the April 29, 2005 Report as a "summary" of the March 22, 2005 Report in his closing argument.  (Doc. No. 2218 at 27-35.)

The Government opposes these ineffective-assistance-of-counsel claims, arguing that Petitioner has essentially repackaged his attacks on Klempner's credibility, which were previously "raised and . . . emphatically rejected by the Third Circuit" on direct appeal, as claims of  ineffective assistance of counsel.  (Doc. No. 2178 at 29.)  The Government insists that Petitioner should be precluded from raising his ineffective-assistance-of-counsel claims in this motion because the factual predicates supporting these claims were resolved on direct appeal. (Id.)  As a general practice, "issues resolved in a prior direct appeal will not be reviewed again by way of a § 2255 motion."  United States v. Travillion, 759 F.3d 281, 288 (3d Cir. 2014) (quoting United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993)).  Indeed, "[o]nce a legal argument has been litigated and decided adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. § 2255."  United States v.

<u>Orejuela</u>, 639 F.2d 1055, 1057 (3d Cir. 1981).  Having thoroughly reviewed Petitioner's Section 2255 motion, however, the Court is not persuaded by the Government's position that Petitioner has employed this Section 2255 motion as a means of re-litigating challenges to Klempner's credibility that were previously raised and rejected on direct appeal.  Accordingly, the Court will address the merits of Petitioner's claims in turn.

> **(i)** **Failure to pursue claim of prosecutorial misconduct**

Petitioner asserts a nested claim of ineffective assistance of counsel based upon an alleged failure to raise the issue of prosecutorial misconduct in connection with the prosecutor's submission of false and fabricated evidence before the grand jury and at trial.  (Doc. No. 2218 at 14-34.)  The validity of this claim hinges on whether the prosecutor committed misconduct by using the April 29, 2005 Report to procure an indictment and ultimately secure Petitioner's conviction.

The Supreme Court has held that a conviction obtained through the knowing use of false evidence amounts to a violation of due process where there exists "a reasonable likelihood that the false testimony could have affected the judgment of the jury." <u>United States v. Agurs</u>, 427 U.S. 97, 103 (1976);  <u>see</u> <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972);  <u>Napue v. Illinois</u>, 360 U.S. 264, 269 (1959).  This prohibition against the use of false evidence "does not cease to apply merely because the false testimony goes only to the credibility of the witness."  <u>Naupe</u>, 360 U.S. at 269.  To prevail on a Section 2255 motion asserting allegations of prosecutorial misconduct based on the presentation of false evidence or solicitation of false testimony, the petitioner must demonstrate that:  (1) the evidence at issue was false;  (2) the prosecution knew it was false;  and (3) the false evidence was material to the outcome of the trial.  <u>See</u> <u>United States v. Zuno–Arce</u>, 339 F.3d 886, 889 (9th Cir. 2003), <u>cert. denied</u>, 540 U.S. 1208 (2004) ("[T]he

petitioner must show that (1) the testimony (or evidence) was false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material.").  Judged against the foregoing standard, the Court finds that the record is devoid of any suggestion of prosecutorial misconduct supporting a Strickland claim of ineffective assistance of counsel.

As a preliminary matter, the Court finds Petitioner's claim that the prosecutor exhibited misconduct before the grand jury to be baseless.  Petitioner produces no evidence from which an inference could be drawn that the prosecutor knowingly procured and used false or fabricated evidence in his presentation of the case before the indicting grand jury.  Even if this Court were to conclude that prosecutorial misconduct occurred before the grand jury, the guilty verdict delivered by the jury would have cured any defect that arose in the grand jury proceedings, thereby rendering any misconduct before the grand jury harmless.  See United States v. Console, 13 F.3d 641, 672 (3d Cir. 1993) ("[T]he petit jury's guilty verdict rendered any prosecutorial misconduct before the indicting grand jury harmless.").  Indeed, the Supreme Court has reasoned that an act of prosecutorial misconduct that could theoretically influence the grand jury's determination whether to indict particular defendants for charged offenses is offset by the petit jury's subsequent guilty verdict, as that guilty verdict means "not only that there [is] probable cause to believe that the defendants [are] guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt."  United States v. Mechanik, 475 U.S. 66, 70 (1986). Accordingly, the Court denies Petitioner's claim of ineffective assistance of counsel based on prosecutorial misconduct before the grand jury.

Petitioner's allegations of prosecutorial misconduct at trial likewise fail.  These particular allegations concern the prosecutor's use of the April 29, 2005 Report on redirect examination to

rehabilitate Klempner's credibility following Attorney O'Connell's impeachment of her testimony on cross examination.[4]  Petitioner asserts that the prosecutor exhibited misconduct not only by using the false report to elicit testimony from Klempner knowing that it was fabricated, but also by misreading excerpts from that report on redirect.  (Doc. No. 2218 at 19.)  As an initial matter, the Court finds that Petitioner has failed to sustain his burden of demonstrating that the April 29, 2005 Report itself was, in fact, false.  That the April 29, 2005 Report extrapolated "worked KLEMPNER in Toledo" from the March 22, 2005 Report to mean "worked KLEMPNER as a prostitute in Toledo" does not compel a conclusion that the April 29, 2005 Report was fabricated.  (Mar. 22, 2005 Report at 1; Apr. 29, 2005 Report at 5.)  Petitioner's argument over semantics does not provide a proper basis for finding such evidence to be false, even if slight inconsistencies could be drawn from such reports.  See United States v. Thompson, 117 F.3d 1033, 1035 (7th Cir. 1997) ("[M]ere inconsistencies in testimony fall  short of establishing perjury and most certainly do not establish that the government knowingly utilized perjured testimony.") (citation and internal quotation marks omitted).  Accordingly, the Court rejects Petitioner's characterization of this evidence as false.

Furthermore, the Court is unmoved by Petitioner's accusation that the prosecutor misread portions of the April 29, 2005 Report on redirect.  The prosecutor asked the following questions on redirect:

> Q.    Now, just jumping back, you were shown a statement from April 29, and in that statement Mr. O'Connell showed you, in that statement you said – at one point at the very top you said that Terry and Terrance Williams are different people.  Is that correct?

> A.     Yes, I said that.

---

[4] Petitioner's challenges to the prosecutor's use of that report on redirect are curious, given that this line of questioning elicited testimony from Klempner that Petitioner adamantly insists was "truthful" and favorable to him.

. . .

Q.      Now, flipping to the next page, in that same exact statement, it indicates
         that in this interview, she advised that Prince got mad at her because she
         did not make enough money and passed her off to another pimp named
         Terry, who drove from Toledo, Ohio, to Pennsylvania to get her.  Terry
         worked Klempner as a prostitute in Toledo, Ohio, and then sent her to
         work at an escort service in Orlando.  Do you remember saying that?

A.       I don't remember saying nothing about working in Toledo, Ohio.  I never
         worked in Toledo.

(Trial Transcript at 356-57).  The prosecutor's recitation of that report was entirely consistent

with what the report actually stated.  Thus, the Court is unpersuaded by Petitioner's argument

that the prosecutor presented false evidence to the jury given his verbatim reading of that report

on redirect.

More importantly, Petitioner has not made the requisite showing of materiality.  Indeed,

the Court finds that the introduction of the April 29, 2005 Report at trial, and the testimony

elicited from it, had no impact on the outcome of Petitioner's trial.  See Smith v. Phillips, 455

U.S. 209, 219 n.10 (1982) ("Even in cases of egregious prosecutorial misconduct, such as the

knowing use of perjured testimony, we have required a new trial only when the tainted evidence

was material to the case.").  Here, the Third Circuit explicitly rejected related challenges to the

sufficiency of the evidence presented by Petitioner on appeal from his conviction and sentence.

United States v. Williams, 428 F. App'x 134, 137 (3d Cir. 2011).  On appeal, Petitioner argued

that transporting Klempner to Toledo from Harrisburg, where she had performed sexual acts on

him, was insufficient for conviction on Count Ten of the indictment, which charged him with the

knowing transport of a minor in interstate commerce "with intent that the individual engage in

prostitution, or in any sexual activity for which any person can be charged with a criminal

offense."  18 U.S.C. § 2423(a).  The Third Circuit declined to accept Petitioner's reading of the

"statute as requiring that prostitution per se occurred at the destination," emphasizing that "the focus is on intent . . . and not necessarily on the accomplishment of a specific act." Id. at 139. The Third Circuit found that sufficient evidence existed for "the jury to conclude that he possessed the requisite intent for conviction—i.e., the 'calculated means for effectuating [Klempner's] prostitution,'" irrespective of what may or may not have actually transpired in Toledo, and further noted that she "was prostituted, even if after the Toledo trip." Id. Similarly, Petitioner's evidentiary challenges to his convictions under 18 U.S.C. §§ 1591(a)(1) and (c)(1)[5] (Count Eight) were likewise considered and rejected on appellate review, on the basis that Petitioner's convictions were supported by the evidence, including Klempner's testimony that he transported her from Florida and back to Harrisburg for prostitution purposes. Id. at 140. Overall, the Third Circuit found sufficient evidence to support Petitioner's convictions, emphasizing that the substantive elements of these criminal charges did not require proof that Klempner engaged in prostitution in Toledo. Id. In light of the Third Circuit's decision, the Court finds Petitioner's allegations of prosecutorial misconduct based on false evidence of Klempner's prostitution activities in Toledo to be immaterial to his convictions.[6]

Accordingly, having found Petitioner's claims of prosecutorial misconduct before the grand jury and at trial to be devoid of merit, the Court will deny Petitioner's ineffective-assistance-of-counsel claims based on these allegations.

> **(ii)  Remaining claims of error pertaining to the April 29, 2005 Report**

---

[5] At the time of Petitioner's offense, 18 U.S.C. §§ 1591(a)(1) and (c)(1) proscribed the transport of a minor in interstate commerce knowing that the minor will be caused to engage in a commercial sex act, defined as any sex act "on account of which anything of value is given to or received by any person." 18 U.S.C. §§ 1591(a)(1)-(c)(1).

[6] The Court also finds in this context that Petitioner was not prejudiced by any alleged deficient performance.

Petitioner also argues that Attorney O'Connell rendered ineffective assistance by introducing the April 29, 2005 Report together with the March 22, 2005 Report at trial, and by characterizing the April 29, 2005 Report as a summary of the March 22, 2005 Report, rather than highlighting for the Court and jury the material falsities contained in the April 29, 2005 Report. (Doc. No. 2188 at 36 ("Counsel never asserted that the [ ]report was materially false . . . [and] ignored his client['s] request that he inform the court (judge) of the materially false report. . . . )).

It is apparent from a review of Petitioner's Section 2255 motion that these perceived errors on the part of Attorney O'Connell are wholly grounded on Petitioner's theory that the April 29, 2005 Report was fabricated.  This Court has already considered and rejected this argument in the context of Petitioner's ineffective-assistance-of-counsel claims premised on prosecutorial misconduct.  Where an underlying claim of error lacks merit, an ineffective assistance claim cannot lie.  See Ross v. Dist. Attorney of the Cnty. of Allegheny, 672 F.3d 198, 211 n. 9 (3d Cir. 2012) ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.").[7]  Accordingly, the Court denies Petitioner's remaining ineffective assistance claims that stem from Attorney O'Connell's use and characterization of the April 29, 2005 Report at trial, as it finds such claims to be based on a meritless proposition that the April 29, 2005 Report was materially fabricated by the Government to secure Petitioner's conviction.

---

[7] The Court further notes that Petitioner's contention with respect to Attorney O'Connell's failure to address the material falsities contained in the April 29, 2005 Report is belied by Attorney O'Connell's explicit suggestion to the jury in his closing argument that both reports may have been the product of police error inasmuch as they tended to inculpate Petitioner in transporting Klempner to Toledo where she proceeded to work as a prostitute.  (See Trial Transcript at 1454.)  Moreover, the Court cannot overlook the fact that the jury was presented with both reports and heard Klempner's testimony relating to her activities in Toledo.  Her trial testimony was also the subject of extensive cross-examination from both Attorney O'Connell and Steve Rice, counsel representing co-defendant Eric Hayes.  Thus, the jury was given the opportunity to weigh Klempner's credibility and the accuracy of those reports and draw inferences from that testimony and evidence.

### b.      Failure to suppress wiretaps

Petitioner next alleges that Attorney O'Connell rendered ineffective assistance by failing

to file a motion to suppress or "otherwise attempt to prevent the admission of specific (wire-taps)

into evidence." (Doc. No. 2218 at 43.)  Specifically, Petitioner asserts that the introduction of

wiretap evidence of recorded conversations among the pimp partners, including statements

Petitioner made about his previous convictions and his background in the prostitution business,

prejudiced him because it gave a "false and misleading impression" that Petitioner was

previously convicted of a prostitution-related offense. (Id.)  The Government, in response,

argues that a motion to suppress was filed on Petitioner's behalf and was subject to a "lengthy

suppression hearing." (Doc. No. 2178 at 30.)

A review of the docket reveals that Attorney O'Connell filed a motion for leave to join

and adopt co-defendants Franklin Robinson and Derek Price's pretrial motions, which included a

motion to suppress the results of wiretaps, on September 6, 2006. (Doc. No. 470.)  Furthermore,

on November 16, 2006, the Court convened a hearing to allow the parties to present arguments

on those various pretrial motions. (Doc. No. 548.)  Accordingly, the Court finds that Petitioner's

claim that counsel was ineffective for failing to move for suppression is meritless, as it conflicts

with the record.

### c.      Failure to impeach Derek Maes

Petitioner also alleges that Attorney O'Connell was ineffective in his impeachment and

cross-examination of Government witness and co-conspirator, Derek Maes ("Maes"). (Doc. No.

2218 at 44.)  According to Petitioner, Attorney O'Connell failed to discredit Derek Maes'

testimony at trial regarding Petitioner's involvement in prostitution operations in Indianapolis,

Indiana in the mid 1990's. (Id.)  In support of his claim that Derek Maes falsely implicated him

in conducting pimping operations in Indianapolis, Petitioner cites to Maes' previous statement to the FBI that he left Indianapolis after the birth of his son in 1997, and presents records from the Ohio Department of Corrections confirming Petitioner's incarceration from 1990 to 1999.  (Doc. No. 2167-2 at 45.)  Petitioner argues that, had counsel discredited Maes' testimony at trial, "there is a reasonable probability that the out[come] would have been [different]."  (Doc. No. 2218 at 45.)

In opposition, the Government argues that Maes' testimony about his participation in pimping operations in the 1990's in Indianapolis was offered as background information and concerns events beyond the period covered in the indictment.  (Doc. No. 2178 at 30-33.) Furthermore, the Government maintains that Petitioner's act of "isolat[ing] particular discrepancies" in this line of Maes' testimony and "divorc[ing] them from the huge body of evidence presented against" him mischaracterizes the evidence and discounts the Third Circuit's finding that sufficient evidence existed to support his convictions, including the tape recordings that "clearly put Maes in a pimping relationship with [Petitioner] during the period covered in the [i]ndictment."  (Doc. No. 2178 at 32.)

The Court finds that Attorney O'Connell's performance was not deficient under Strickland.  As with other decisions by trial counsel, the Petitioner bears the burden of rebutting the presumption that counsel acted strategically in his decision to pursue other lines of questioning in his cross examination of Maes that may have been essential to the defense.  See Thomas v. Varner, 428 F.3d 491, 499-500 (3d Cir. 2005).  When evaluating the evidence offered in support of Petitioner's claim of ineffectiveness, it is "entirely proper" for the Court to "engage in record-based speculation as to what counsel's strategy might have been."  Id. at 500 n.8. Having conducted this inquiry, it is apparent that Petitioner fails to establish deficient

performance on the part of Attorney O'Connell by his failure to impeach Maes as to the timeline

of his activities in Indianapolis.  Attorney O'Connell and Attorney Rice zealously cross

examined Maes and pursued lines of questioning geared at drawing out testimony about the

volatile relationship between the pimp partners and their lack of common objectives with respect

to prostitution ring operations in an attempt to show the absence of any collective agreement to

enter into the charged conspiracy.  The fact that Attorney O'Connell declined to impeach Maes

on events in Indianapolis that transpired outside of the statute of limitations for the charged

offenses in the indictment does not render his assistance deficient, given that such testimony

would have had marginal value and would potentially distract the finder of fact from other

possible weaknesses of the Government's case.

Moreover, even if Petitioner could demonstrate that  Attorney O'Connell rendered

ineffective assistance, Petitioner's cursory assertion that impeachment of Maes would have

resulted in a different outcome at trial is wholly insufficient to establish prejudice resulting from

any deficient performance, and thus forecloses the availability of relief on this ineffective-

assistance-of-counsel claim.[8]

### d.    Ineffective mischaracterization of the stipulation

Petitioner contends that he received ineffective assistance of counsel when Attorney

O'Connell mischaracterized a stipulation entered into by the parties at trial regarding the arrest

record of Angela Caldwell ("Caldwell") from 2004.  (Doc. No. 2218 at 46.)

To place this claim into context, a co-conspirator and Government witness, Atlas

Simpson ("Simpson"), testified at trial that he posted bail for Caldwell, one of Petitioner's

---

[8] Notwithstanding Petitioner's bare accusation of prejudice, the Court finds that counsel's failure to pursue impeachment on this specific inconsistency did not prejudice Petitioner or detrimentally affect the fairness of his trial.

prostitutes, after her arrest by the Pennsylvania State Police at the Gables truck stop in

Harrisburg in June of 2004.  (Trial Transcript at 1513.)  Following Simpson's testimony,

Attorney O'Connell obtained a copy of Caldwell's arrest record, prompting the parties to enter

into a stipulation.  That stipulation provided that the results of a criminal records search

performed for the year 2004 using the name Angela Caldwell and her alias, Angela Crandall,

revealed no arrest or issuance of a summary citation by the Pennsylvania State Police for any

criminal offense in the year 2004.  (Stipulation at 1 ¶¶ 1-3.)  The stipulation further indicated

that a record of an arrest in June of 2004 did exist for Angela Crandall in the State of California.

(Stipulation at 1 ¶ 4.)  The stipulation concluded with a caveat that the records search "would not

disclose the issuance of a citation for a summary criminal offense by an agency other than the

Pennsylvania State Police, since no record is made for summary criminal offenses."  (Stipulation

at 2 ¶ 5.)  This stipulation was addressed by Attorney O'Connell in his closing argument.

Specifically, Attorney O'Connell stated the following:

> The stipulation entered into between the Government and defense counsel, which I can show you, Britney, whose name is Angela Caldwell or Angela Crandall, depending on which name she's using, there was a police search, and it appears that she was not arrested or had any contact with the state police during the year 2004. There was no arrest for a misdemeanor or a felony offense by any other department in the Commonwealth of Pennsylvania.  But there is, in fact, a record of an arrest in June of 2004 by someone using the name of Angela Crandall, alias of Angela Caldwell, in the State of California.
>
> The rest of the stipulation says that a records search would not disclose the issuance of a citation for a summary criminal offense by an agency other than the Pennsylvania State Police. But under most circumstances, that would not result in somebody's arrest in any event.
>
> So, she's not here in the summer. In June she's in California. So the testimony, I suggest to you, of Mr. Simpson . . . that he had bailed out Britney in the summer of 2004 is incorrect, either intentionally or unintentionally, but it is not correct.

(Trial Transcript at 1450-51).

Petitioner's complains that his counsel exhibited "professional incompetence" by failing to make a distinction between a citation and arrest for a summary offense and by misstating the content of the stipulation.  (Doc. No. 2218 at 47.)  In response, the Government contends that Petitioner does not "explain how the distinction between a citation and an arrest for a summary offense would have changed the outcome of [the] case" where the "evidence was overwhelming."  (Doc. No. 2178 at 35.)

The Court agrees with the Government that Attorney O'Connell's use of the stipulation in his closing argument did not render his performance unconstitutionally inadequate under Strickland.  Petitioner's argument that Attorney O'Connell's performance was deficient because he mischaracterized the content of the stipulation and did not explain the distinction between a citation and arrest in his closing argument is groundless.  Attorney O'Connell essentially read the stipulation to the jury verbatim, specifically calling attention to the fact that Caldwell was in California in the summer of 2004 to undermine the testimony of Simpson that he paid Caldwell's bail following her arrest in Harrisburg in 2004.  Petitioner has simply not defeated the presumption that the tactic employed by Attorney O'Connell to weaken the testimony of a government witness—a tactic that the Government acknowledges in its brief was successful— might be considered sound trial strategy.  (Doc. No. 2178 at 35-36); see Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996) ("[T]he [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy."").  Furthermore, Petitioner's blanket accusation that, but for counsel's "unreasonable and unprofessional errors and omissions there is a reasonable probability that the out[come] . . . would have [been] different,"  is insufficient to show prejudice resulting from any deficiency in

counsel's conduct.  (Doc. No. 2218 at 48.)  Accordingly, this ineffective-assistance-of-counsel claim fails.

### e.      Failure to object to Government witness Wayne Banks' Trial Identification and Testimony

Petitioner lastly asserts that Attorney O'Connell was ineffective for failing to discredit government witness and co-conspirator Wayne Banks' ("Banks") identification of Petitioner at trial.  (Doc. No. 2167-2 at 49.)  According to Petitioner, had Attorney O'Connell objected to Banks' in-court identification of Petitioner following Banks' testimony at trial that he never met Petitioner personally, there is a "reasonable probability that the out[come] . . . of the conspiracy charged in [C]ount One would have been different."  (Doc. No. 2218 at 49);  (see Trial Transcript at 48 ("Well, I've never met Terry Williams personally, like, face-to-face.")).  The Government maintains that the Third Circuit found the evidence of Petitioner's involvement with prostitution overwhelming and further notes that "the limited nature of Banks' identification of [Petitioner] was clearly explained to the jury and Banks was subjected to extensive cross examination, both by [Attorney] O'Connell and by counsel for co-defendant Eric Hayes."  (Doc. No. 2178 at 38.)

The Court finds that counsel's failure to object to Banks' in-court identification did not render his assistance ineffective.  Although Attorney O'Connell did not explicitly object to Banks' identification of Petitioner, the record fully supports that counsel thoroughly and vigorously cross examined Banks regarding the scope of his interactions with Petitioner.  The jury repeatedly heard testimony from Banks on direct and cross examination as to the lack of personal contact Banks had with Petitioner.  (See Trial Transcript at 159 ("Q. But you don't know Terrance Williams? A. Yes. No, I don't know Terrance Williams. . . .  Q. So you didn't feel comfortable talking directly to Mr. Williams? A. Well, I didn't have Mr. Williams' number.

I didn't have a rapport with Mr. Williams. . . . Q. Mr. Williams had not, up to that time or any other time, initiated any contact with you?  A. No.")).  The questions asked on cross examination appear to have been incorporated into a comprehensive defense strategy aimed at weakening the prosecution's case by underscoring the absence of any evidence of an association or enterprise between Petitioner and the co-conspirators, as is required to support the charged conspiracy.  Petitioner has not overcome the presumption that his counsel's strategic choices were objectively reasonable.  Furthermore, the Court rejects Petitioner's position that he was prejudiced as a result of this failure to object to the in-court identification.  As correctly identified by the Government, the Third Circuit found the evidence of his involvement in this prostitution operation overwhelming.  (Doc. No. 2178 at 38);  see United States v. Nino, 878 F.2d 101, 105 (3d Cir. 1989) (holding that when the record is "replete with evidence of petitioner's guilt," a petitioner is precluded from showing that there is a reasonable probability that but for counsel's errors the result of the proceeding would have been different).  Accordingly, the Court denies Petitioner's claim that Attorney O'Connell deprived Petitioner of reasonable professional assistance as guaranteed by the Constitution by subjecting Banks to extensive cross examination in lieu of objecting to his in-court identification.

### 2.        Ineffective-assistance-of-counsel claims involving Attorney Conrad

In addition to his claims of ineffective assistance at trial by Attorney O'Connell, Petitioner challenges the representation by his resentencing counsel, Attorney Conrad.  From its thorough review of the voluminous materials submitted in support of Petitioner's Section 2255 motion, the Court liberally construes Petitioner's motion as principally challenging Attorney Conrad's failure to prepare for his resentencing, object to the sentencing enhancements, and raise the disparities in sentences between Petitioner and other similarly situated co-defendants.  (Doc.

No. 2218 at 13, 50-51.)  Petitioner has also claimed that counsel deceived Petitioner by

misrepresenting to Petitioner the status of his originally filed Section 2255 petition.  (Id. at 51.)

As with Petitioner's other claims of ineffective assistance of trial counsel, Petitioner's claims

involving Attorney Conrad will be denied.

### a.     Failure to prepare for sentencing

Petitioner contends that Attorney Conrad failed to conduct a "rudimentary" investigation

into his resentencing.  (Id. at 13.)  However, Petitioner makes no showing of what this

"rudimentary" investigation would have revealed and how it would have affected the outcome of

his resentencing.  Indeed, Petitioner wholly fails to meet his burden of demonstrating counsel's

deficient performance, as he has produced no evidence that his counsel failed to conduct an

appropriate investigation into the circumstances of his resentencing. See United States v. Cronic,

466 U.S. 648, 666 (1984) ("Respondent can therefore make out a claim of ineffective assistance

only by pointing to specific errors made by trial counsel.");  Stevens v. Del. Corr. Ctr., 295 F.3d

361, 370 (3d Cir. 2002) ("[A] party claiming ineffective assistance must identify specific errors

by counsel, and the court must indulge a strong presumption that counsel's conduct was

reasonable.").

Furthermore, as the Government persuasively argues, this claim appears to be

contradicted by the record.  The Court observes that counsel filed a notice of a discovery request

shortly after the Court appointed him to represent Petitioner at the resentencing.  (Doc. No.

2085.)  Moreover, at the resentencing hearing, the Court commended Attorney Conrad for doing

a "nice job of portraying the good sides of [his] client."  (Resentencing Transcript at 10.)

Attorney Conrad zealously advocated on Petitioner's behalf regarding the Court's consideration

of the 18 U.S.C.  § 3553(a) sentencing factors, highlighting Petitioner's difficult upbringing, his

exposure to the prostitution industry at a young age, his perfect prison record to date, and emphasizing Petitioner's willingness to change for his children and to lead a productive life.  (Id. at 2-8.)  Based in part on the arguments made by Attorney Conrad, the Court adopted counsel's recommendation of imposing concurrent as opposed to consecutive sentences.  (Id. at 11.)  As the record does not support Petitioner's claim that Attorney Conrad provided ineffective assistance at resentencing, the Court will dismiss this claim.

### b.      Failure to raise or object to sentence enhancements

Petitioner argues that his counsel failed to object to certain sentencing enhancements at his resentencing.  (Doc. No. 2218 at 13.)  However, the Court finds Petitioner's argument unavailing given the Third Circuit's instructions on remand for resentencing on Count Eight of the indictment.

It is axiomatic that "an inferior court has no power or authority to deviate from the mandate issued by an appellate court."  Briggs v. Pa. R. Co., 334 U.S. 304, 306 (1948) (citations omitted).  When a trial court is presented with a case on remand for further proceedings consistent with the decision of an appellate court, it "must proceed in accordance with the mandate and the law of the case as established on appeal."  United States v. Kikumura, 947 F.2d 72, 76 (3d Cir. 1991) (internal quotations omitted).  This requires the trial court to "implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.'"  Bankers Trust Co. v. Bethlehem Steel Corp., 761 F.2d 943, 949 (3d Cir. 1985).  The Third Circuit has reasoned that the mandate rule serves the following purposes:

> It preserves the proper allocation of authority within the tiered federal court structure set up by Congress and the Constitution. . .  It promotes predictability and finality by notifying parties of the matters that remain open on remand and committing the rest to final resolution.  And it safeguards stability in the

administration of justice, for the orderly functioning of the judiciary would no doubt crumble if trial judges were free to disregard appellate rulings.

United States v. Kennedy, 682 F.3d 244, 253 (3d Cir. 2012). As a corollary to that well-established principle, "[t]he law of the case . . . doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Feesers, Inc. v. Michael Foods, Inc., 591 F.3d 191, 207 (3d Cir. 2010) (citation omitted).

Here, in addition to affirming Petitioner's convictions on all counts, the Third Circuit addressed a number of arguments raised by Petitioner relating to the Court's application of the Sentencing Guidelines. Williams, 428 F. App'x at 140-43. The Third Circuit upheld the Court's calculation of Petitioner's base offense level and rejected Petitioner's argument that the District Court erred in applying a four-level increase pursuant to "U.S.S.G. § 2G1.3(c)(3) (Promoting a Commercial Sex Act or Prohibited Sexual Conduct with a Minor), with a cross-reference to § 2A3.1 (Criminal Sexual Abuse), for conduct described in 18 U.S.C. § § 2241 or 2242 (knowingly causing another to engage in a sexual act by force, threats, or placing that 'person in fear that any person will be subject to[,e.g.,] . . . serious bodily injury."). Id. at 141. It also upheld over Petitioner's objections the Court's application of "two, two-level enhancements on the premise that Williams 'knew or should have known' that his offense involved 'a large number of vulnerable victims,' per U.S.S.G. § 3A1.1(b)(1) & (2), the "four-level 'organizer or leader' enhancement per §3B1.1(a)," and the "obstruction of justice enhancement per § 3C1.1." Id. at 141-42.

Although the Third Circuit affirmed the base offense level and each enhancement applied by the District Court at Petitioner's initial sentencing, it found that the Court erred in two

24

respects.  Id. at 142.  First, it found that the decision to merge Counts One, Two, and Eight for

purposes of sentencing violated the double jeopardy prohibition.  Id. at 143.  As a result, the

Third Circuit vacated the sentences imposed on Counts Two and Ten.  Id.  Second, the Court of

Appeals found that the verdict slip did not enable the jury "to find the differently-framed

elements controlling" Count Eight's controlling offense requirements under 18 U.S.C. § 1591(a).

Id.  According to the Third Circuit, the statute at the time of Petitioner's sentencing allowed for

either: (1) up to life imprisonment (a) if the offense was effected by force, fraud, or coercion, or

(b) if the victim was under the age of 14;  or (2) no more than 40 years if the offense was not

effected by force, fraud, or coercion and the victim was at least 14 years but under the age of 18.

Id. at 142.  The verdict slip, however, only asked the jury to find whether Petitioner was guilty of

"Sex Trafficking of Children by Force, Fraud, or Coercion."  Id. at 142-43.  Thus, the Court of

Appeals vacated the sentence as to Count Eight and remanded with the explicit instruction that

the Court impose a sentence that would not exceed 40 years.  Id. at 143.

In this Court's view, a recalculation of Petitioner's total offense level was unnecessary

given the instruction that it impose a sentence on Count Eight within the applicable guideline

range "that shall not exceed 40 years," taken in conjunction with the Third Circuit's decision

affirming Petitioner's base offense level and each of the sentence enhancements he received.

Adhering to this mandate, but recognizing that it was "free to review the efficacy of what

remains in light of the original plan, and to reconstruct the sentencing architecture upon remand,"

the Court acted within the scope of its resentencing authority when it evaluated the § 3553

sentencing factors in arriving at Petitioner's 40-year sentence.  United States v. Davis, 112 F.3d

118, 122 (3d Cir. 1997).  Because the Court would not have entertained argument on the

sentence calculation in light of the Third Circuit's mandate on remand, it follows that Petitioner

was not prejudiced by counsel's failure to raise or object to the sentence enhancements.

Accordingly, the Court denies this ineffective-assistance-of-counsel claim for lack of prejudice

resulting from Attorney Conrad's allegedly deficient representation.

### c.    Failure to preserve issue of sentence disparity

Petitioner claims that Attorney Conrad rendered ineffective assistance of counsel in

failing to preserve the issue of an unwarranted sentencing disparity.  (Doc. No. 2218 at 13.)

"A district court to which a case is remanded . . . shall resentence a defendant in

accordance with Section 3553."  18 U.S.C. § 3742(g).  Specifically, the court must, in the

exercise of its discretion, provide meaningful consideration to the § 3553(a) factors, which

includes "the need to avoid unwarranted sentence disparities among defendants with similar

records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6);  see United

States v. Merced, 603 F.3d 203, 215 (3d Cir. 2010).  In giving meaningful consideration to the

sentencing factors, "the district court need not discuss and make findings as to each of the §

3553(a) factors if the record makes clear that the court took the factors into account in

sentencing. . . ."  United States v. Friedman, 658 F.3d 342, 362 (3d Cir. 2011).  The sentencing

court is not required to raise on its own initiative every conceivable issue during sentencing, nor

is it required to address and discuss meritless arguments made by a litigant.  Merced, 603 F.3d at

215 (citing Gall v. United States, 552 U.S. 38, 54 (2007);  United States v. Cooper, 437 F.3d

324, 329 (3d Cir. 2006)).  However, the Court must address colorable arguments regarding the

applicability of the sentencing factors as part of its meaningful consideration.  Merced, 603 F.3d

at 215.

Here, Attorney Conrad argued the following at the resentencing hearing:

We talked about some of his co-defendants, Your Honor, and they received
somewhat lesser sentences.  I believe we just talked about one of them, Mr. Hayes

received down to 420 months. And, Your Honor, we'd be asking for any kind of mercy, but certainly if the court would show that kind of leniency, Mr. Williams would be much appreciative.

(Resentencing Transcript at 6.) This prompted the Court to respond with the following:

> [Mr. Williams] is at the top of the food chain as we compare one defendant to another. As best we could put together after all these years, I believe that he did receive the highest of all sentences of the conspirators, with Mr. Hayes coming in second at a sentence of 420 months.
>
> That sentence was imposed because the guideline ranges were different and, of course, the facts were very different with Mr. Williams' involvement with young [Klempner] and his attempt to suborn perjury and the attempts that he made to hide her from authorities as the case was being investigated. So for those reasons, we do see a disparity in sentence. . . . [N]ow knowing that the maximum sentence is less than we thought at the time, that it seems that some adjustment ought to be made to avoid disparity and to impose a sentence that will meet all of the guideline objectives, promoting respect for the law, providing adequate punishment, without imposing a sentence that is unnecessarily excessive.
>
> I believe that imposing a sentence concurrently to Count 1 would achieve sentencing goals and would perhaps give Mr. Williams the incentive to continue in the progress that he appears to have made, because allowing for a concurrent sentence would give him the possibility of release in his natural lifetime.

(Id. at 10-11.) Despite Petitioner's arguments to the contrary, Attorney Conrad requested a downward variance. It is also clear that the Court not only gave meaningful consideration to the § 3553(a) factors, but also imposed a sentence of 40 years' imprisonment on Count Eight to be run concurrently with the sentence imposed on Count One in order to avoid the potential for a sentence disparity. Therefore, Petitioner is unable to establish either deficient performance by counsel or resulting prejudice as required by Strickland. See Strickland, 668 U.S. at 687-88. Accordingly, the Court finds that Petitioner is not entitled to relief based on this allegation of ineffective assistance of counsel.

### d. Failure to properly notify Petitioner of the status of his Section 2255 petition

Petitioner's final claim of error directed at Attorney Conrad can be disposed of briefly.

Petitioner asserts that Attorney Conrad was involved in a "premeditated deliberate scheme . . . to

deprive [P]etitioner access to the Court through deception." (Doc. No. 2218 at 50.)  The real

thrust of Petitioner's claim is that Attorney Conrad deceived  Petitioner by volunteering to check

on the status of his initially filed Section 2255 motion but then never informed Petitioner that his

motion had been denied.  The Court perceives no prejudice resulting from this alleged

misconduct, as Petitioner has since filed the instant Section 2255 motion and has been afforded

an opportunity to have his claims adjudicated on their merits.  Accordingly, the Court will deny

this claim of ineffective assistance of counsel.

### 3.      Cumulative error

Petitioner argues that even if no single error on the part of his counsel taken alone entitles

him to relief, the cumulative effect of these attorneys' errors warrant habeas relief.  (Doc. No.

2218 at 18.)  "Individual errors that do not entitle a petitioner to relief may do so when

combined, if cumulatively the prejudice resulting from them undermined the fundamental

fairness of his trial and denied him his constitutional right to due process."  Fahy v. Horn, 516

F.3d 169, 205 (3d Cir. 2008).  In order to demonstrate entitlement to relief based on cumulated

errors, a petitioner must demonstrate "actual prejudice."  Id.

Above, the Court found no deficient conduct as to each of Petitioner's several claims of

ineffective assistance of counsel.  Similarly, the Court found that no appreciable prejudice

resulted to Petitioner as a result of Attorney O'Connell and Attorney Conrad's conduct as to each

of Petitioner's claims.  It follows that, even accounting for Petitioner's claims altogether, he is

not entitled to relief.  Consequently, the Court will deny Petitioner's cumulative error claim.

### B.      Actual Innocence Claim

Petitioner has also advanced a freestanding claim of "actual innocence." (Doc. No. 2218

at 38.)  Neither the Supreme Court nor the Third Circuit has explicitly recognized a freestanding

claim of actual innocence in a noncapital case meriting habeas relief.  McQuiggin v. Perkins, 133

S. Ct. 1924, 1931 (2013) (citing Herrera v. Collins, 506 U.S. 390, 404–405 (1993)).  Rather,

traditionally, actual innocence has served only as a gateway to revive constitutional claims

otherwise subject to procedural default.  McQuiggin, 133 S. Ct. at 1931.  In this context, the

Supreme Court has required a petitioner asserting innocence as a gateway to a defaulted claim to

establish that, in light of new evidence, "it is more likely than not that no reasonable juror would

have found petitioner guilty beyond a reasonable doubt."  Schlup v. Delo, 513 U.S. 298, 327

(1995).  While the Supreme Court has left unresolved whether a stand-alone actual innocence

claim could be cognizable on Section 2255 review in a noncapital case, it has implied that the

threshold showing of actual innocence would be "extraordinarily high," requiring "more

convincing proof of innocence" than that necessary to establish actual innocence as a gateway to

overcome procedural default.  House v. Bell, 547 U.S. 518, 555 (2006).

Even assuming, arguendo, that this Court could entertain a claim that has, to date, been

unavailable on Section 2255 review, it is clear that Petitioner would not be entitled to relief, as

he has not made the requisite threshold showing of innocence that would permit a court to review

a procedurally defaulted claim, much less satisfy the extraordinarily stringent standard

contemplated for a freestanding claim of actual innocence.  Indeed, while Petitioner has sought

relief on a standalone claim of actual innocence, a review of the substance of his claim reveals

that Petitioner's argument of actual innocence is grounded only on allegations that the April 29,

2005 Report was fabricated.  (Doc. 2218 at 38.)  This general attack on the legal sufficiency of

the Government's case against him is insufficient to prove actual innocence.  Accordingly, the

Court denies this claim.

**IV.     CONCLUSION**

For the foregoing reasons, the Court will deny Petitioner's Section 2255 motion to

vacate.  (Doc. No. 2218.)  Consequently, Petitioner's subsequently filed motion to expedite

disposition of his Section 2255 motion, and "Motion for Judicial Notice of Adjudicative Facts"

will be denied as moot.  (Doc. Nos. 2196, 2194.)  In addition, the Court finds that Petitioner has

not made a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(2).

Accordingly, no certificate of appealability shall issue.

An order consistent with this Memorandum follows.